[Civ. No. 27617. Second Dist., Div. Four. Dec. 17, 1963.]

CENOVIA MADERO et al., Plaintiffs and Respondents, v. JULIA de RIERAS, Defendant and Appellant; I. J. de RIERAS, Intervener and Appellant.

JULIA de RIERAS, Plaintiff and Appellant, v. CENOVIA MADERO, Defendant and Respondent.

(Consolidated Cases.)

I. J. de Rieras and Julia de Rieras, in pro. per., for Appellants.

Sisenwein & Stanton and Warren M. Stanton for Respondents.

BURKE, P. J.— These actions, consolidated for trial, involve a dispute between two sisters, Cenovia (Cenovia Gamboa Madero) and Julia (Julia Gamboa de Rieras), concerning a parcel of real property held by them as joint tenants. Cenovia based her action on an oral agreement with Julia whereby Julia agreed to sell to her all of her interest in the property for the sum of $3,500. In order to raise the money to pay off Julia's interest in the property, the sisters negotiated a new loan on the property in the amount of $6,500 from the Union Federal Savings and Loan Association which was secured by a trust deed. Out of the proceeds of the loan, $3,061.55 was paid to retire an existing encumbrance. This amount, together with escrow charges being deducted from the face amount of the loan, left a balance of $3,194.35 which was made payable to the sisters jointly. As holders of the legal fee title to the property, both sisters executed the promissory note and the trust deed securing the new loan. I. J. de Rieras, Julia's husband, also co-signed the note. The check, representing the net proceeds from the escrow, was endorsed by Cenovia in favor of her sister who cashed the

check, crediting Cenovia with a payment of $3,100 for Julia's interest in the property and paying the remaining $94.35 to Cenovia.

At the time of this division of the funds from proceeds of the escrow Julia executed the following instrument which she delivered to her sister:

"I promise to sign a quitclaim deed over to Cenovia Gamboa when the sum of $400.00 is paid to me *in full for the property* at 2814 Pasadena Avenue, Los Angeles 31, California.

[signed] Julia G. de Rieras (nee: Gamboa)" (Italics added.)

Thereafter Cenovia offered to pay Julia the $400 for the quitclaim deed promised but Julia reneged. Cenovia instituted action to compel specific performance and to quiet title to the property. Julia cross-complained seeking various forms of relief, and in addition filed her own separate action seeking partition of the property and other relief. After the filing of the lis pendens in the action instituted by Cenovia, Julia conveyed her interest in the property to her husband, I. J. de Rieras. His motion to intervene was granted and he filed a complaint in intervention.

Various appeals were taken by Julia and her husband from preliminary orders, which have since become moot because the principal action has been tried on its merits. The case was tried by the judge sitting without a jury, and while there was considerable conflict in the evidence the judge indicated in a memorandum decision that he resolved the conflict in favor of Cenovia.

The court gave judgment in favor of Cenovia, ordering that the oral agreement referred to in her complaint be specifically performed and that upon entry of the judgment Cenovia deposit $400 with the clerk of the court for the benefit and use of Julia. He further ordered that within 10 days after entry of judgment Julia and her husband execute and deliver a quitclaim deed to Cenovia covering the subject property. He further ordered that in the event they failed to execute and deliver such deed the clerk of the court be authorized and directed to execute the same. He further ordered that title to the property be quieted in Cenovia against all claims or demands of Julia and her husband. The court gave judgment against Julia on her cross-complaint and ordered that the defendants named therein are entitled to judgment against Julia for their costs of suit. He also ordered judgment in favor of Cenovia against Julia in the action instituted

by Julia. He further ordered that the intervener take nothing by reason of his intervention.

No transcript of the testimony has been provided on appeal, and it is therefore presumed that there is adequate evidence to support the findings and judgment. The burden is upon appellants, Julia and her husband, affirmatively to show error. (*Agnew* v. *Contractors Safety Assn.*, 216 Cal.App.2d 154 [30 Cal.Rptr. 690]; *Bradford* v. *Winter*, 215 Cal.App.2d 448 [30 Cal.Rptr. 243]; *Green* v. *Green*, 215 Cal.App.2d 31 [30 Cal.Rptr. 30].)

Julia's position is that she was the one who bought this property originally and that Cenovia had paid nothing on it; that although the property was in joint tenancy it was really her property; that the $3,100 was raised by loan on such property for which she signed a promissory note, with her husband as a co-signer, and remained obligated. Therefore, she argues, the $3,100 paid her as a result of the loan transaction was really her own money secured by her own property and it is unjust to give Cenovia credit on the purchase of the property for the $3,100 since this amount was her money and not Cenovia's. To state it plainly, she takes the position that Cenovia is using Julia's own money with which to buy the property from her. Alternatively, she argues if it is to be assumed by the manner in which the property was taken, as joint tenants, that each owned a one-half interest in the property then under this view the maximum amount which should be credited to Cenovia on the purchase price of the property is one-half of the $3,100 which they had raised by loan on their property; that it is inequitable to give Cenovia credit for the remaining half of the $3,100 because that half constitutes Julia's money and not Cenovia's.

Contrary to these contentions, Cenovia asserted that the agreement between the sisters was simply one of joint owners of property who agreed between themselves that one should buy out the other's interest. They agreed on a sale price of $3,500 and in order to raise the money sought a loan on the property. As a net result, one of the two joint owners would have cash of $3,500 and the other would have the property subject to an encumbrance which was approximately double that of the original encumbrance on the property.

Apparently, in weighing the conflict in the testimony the court was greatly influenced by the written memorandum signed by Julia, quoted above, which appeared to support Cenovia's version of the transaction. The property itself re-

mained the basic security for the repayment of the $6,500 loan. Neither Julia nor her husband could be held liable for any deficiency, assuming a default in payments under the loan agreement, until the lending institution had first exhausted its security. There is no reason to assume that the institution would loan this amount on the property unless it believed that the real estate constituted ample security.

As is borne out by the clerk's transcript on appeal and the voluminous documents therein, these issues between the two sisters and the intervening husband have been bitterly contested and many attempts have been made by the latter to inject extraneous issues into the litigation. Suffice it to say that these attempts are wholly without merit and to dignify them by specifying them in detail in this decision would only serve to unduly burden the proceedings and to encourage further efforts along these lines. The parties received a fair trial; the trial court went to great length in his memorandum to explain the basis of the decision. At the time of oral argument, basically the same contentions raised by Julia and her husband were again argued and considered. They have no merit.

The judgments are affirmed.

Jefferson, J., concurred. Kingsley, J., did not participate.

The petition for a rehearing was denied January 7, 1964, and appellants' petition for a hearing by the Supreme Court was denied February 5, 1964.